SHAWN KHORRAMI, ESQ., SBN 180411
  skhorrami@kbsslaw.com
PAYMON KHATIBI, ESQ., SBN 282651
  pkhatibi@kbsslaw.com
KHORRAMI BOUCHER SUMNER SANGUINETTI, LLP
444 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: (213) 596-6000
Facsimile: (213) 596-6010
*Attorneys for Plaintiffs* RICARDO LARA, ANA LARA

*Counsel for the parties continued on the next page*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| BRENNAN COLBERT, | Case No.: 1:13-CV-01589-AWI-JLT |
|---|---|
| Plaintiff(s), | JOINT SCHEDULING REPORT |
| v. | **TELEPHONIC CONFERENCE** |
| COUNTY OF KERN, ET AL., | DATE: JANUARY 16, 2014<br>TIME: 8:30 A.M. |
| Defendant(s). | HON. JENNIFER L. THURSTON<br>U.S. MAGISTRATE JUDGE<br>BAKERSFIELD, CA |



1

JOINT SCHEDULING REPORT

HERMEZ MORENO, ESQ., SBN 72009
  hmoreno@kbsslaw.com
LAW OFFICES OF HERMEZ MORENO, PC
444 S. FLOWER St., 33rd Floor
Los Angeles, CA 90071
Telephone:  (213) 596-6000
Facsimile:   (213) 596-6010
*Attorneys for Plaintiffs*

Judith M. Denny, Esq., SBN 200001
  jdenny@co.kern.ca.us
Office of County Counsel
County of Kern
1115 Truxtun Avenue
Fourth Floor
Bakersfield, CA 93301
Telephone:  (661) 868-3813
Facsimile:   (661) 868-3805
*Attorneys for Defendants*



# JOINT SCHEDULING REPORT

Pursuant to the Court's Order Setting Mandatory Scheduling Conference, Plaintiff Brennan Colbert and Defendants County of Kern and Edward Hughes, submit this Joint Scheduling Report. On December 19, 2013, the parties met and conferred regarding this Joint Scheduling Report.

Paymon Khatibi, Esq., Khorrami Boucher Sumner Sanguinetti, LLP, represented Plaintiff. Mr. Khatibi is registered in the ECF System. His email is pkhatibi@kbsslaw.com. Judith M. Denny, Office of County Counsel, County of Kern, represented Defendants. Ms. Denny is registered in the ECF System. Her email is JDenny@co.kern.ca.us.

## 1. Summary of Factual and Legal Contentions

a. Plaintiff

On the evening of August 24-25, 2012, just around midnight, at or near his house on Palm Avenue, Bakersfield, CA, Plaintiff Brennan Colbert was legally walking toward his parent's house, with which he lives, after completing his nightly walk. Brennan was 27 years older, suffers from Asperger's Syndrome and was under medical care. As Brennan proceeded toward his house, without cause or justification whatsoever, he was suddenly accosted by Defendant Hughes in his police vehicle. Defendant Hughes then proceeded for no reason and with no justification, to assault Brennan, chased Brennan to his parent's house where Defendant Hughes kicked in the door and tazed Brennan in front of his mother. After Brennan went to his room and locked himself in, for fear of his life, Deputy Hughes kicked in that door and shoved him into the hallway, pacing his hand over his revolver. Meanwhile Brennan's parents informed Deputy Hughes of their son's medical condition and his father's service with Kern County Search and Rescue. Three additional officers arrived and handcuffed Brennan. At no time prior to this



did any deputy inform Brennan why he was under arrest or why Defendant Hughes had chased him. The handcuffing was made tight so as to punish Brennan as it ate into his skin, leaving a mark even a year later.

Brennan was transported by Hughes to Kern Medical Center for injuries received from the tazer. Hughes again acted so as to intimidate Brennan, driving at speeds in excess of 80 miles per hour. Hughes at one point turned to Brennan and told him, "If I hadn't seen those plaques of your dad's on the wall, I would have shot you dead." At the hospital while he was waiting to be tended to, Brennan observed Hughes constantly on his cell phone with his supervisors. At one point, Hughes could be heard admitting to his superiors that he may have arrested the wrong person. Brennan was released to the custody of Hughes again and Hughes proceeded to speed to the detention facility where Brenann was incarcerated until he was released with no explanation for his detention or release. Thereafter, Defendant Hughes prepared a false police report charging Brennan with "obstruct peace officer" [sic]. Plaintiff was required to hire a private defense attorney against these false charges and spent $6,300 until the D.A. refused to file a criminal complaint. Brennan has not been required to hire attorneys to vindicate his rights.

b. Defendants

On August 23, 2012 around 11:00 p.m., Deputy Hughes was dispatched to a report of a male subject prowling around the complaining party's home and property. The resident reported he believed the prowler was on his property on more than one occasion and believed that he lived in or around his block. After interviewing the resident and obtaining a physical description (white male, 25-30 years of age, brown, medium length curly hair, thin build, last seen wearing a black baseball cap and unknown colored plaid shirt), Deputy Hughes commenced to patrol check the area for the subject. After circulating the area, Deputy Hughes soon spotted a male subject matching the description given to him by the resident. Deputy Hughes decided to stop and identify the subject (who was later identified



as Brennan Colbert, plaintiff). When Deputy Hughes spotlighted plaintiff with his vehicle driver's side spot light, Colbert covered his face and ducked behind a parked vehicle. Deputy Hughes saw that he was wearing a blue plaid colored shirt, light brown shorts and a black baseball cap and had longer wavy brown hair. Hughes exited his marked patrol vehicle and stated "Sheriff's Department, stop!" Colbert responded "No way!" Deputy Hughes again repeated himself, but plaintiff turned and ran.

Deputy Hughes pursued plaintiff on foot to a residence at 10308 Palm Avenue. Plaintiff ran to the front door, turned toward Deputy Hughes and took a fighting stance cupping his hands into fists. He then reached into his pocket. Deputy Hughes was unsure whether he was reaching for a weapon. Plaintiff turned and opened the door. Deputy Hughes did not know whether this was plaintiff's residence and if so, could he possibly have weapons inside, or was plaintiff breaking into the residence belonging to other persons who may now be in danger. Plaintiff ran into the house and attempted to slam the door in the Deputy's face. In fresh pursuit, Deputy Hughes followed him inside and deployed his electronic control device, striking plaintiff in the right side of his shoulder and chest area. The device was ineffective and plaintiff pulled the wires and prongs out of his shirt and person.

After entering the residence, an elderly male and female who were later identified as Joe and Betty Colbert (plaintiffs parents) came out of the back master bedroom. Plaintiff proceeded to curse at Deputy Hughes and ran toward a bedroom. Deputy Hughes attempted to apprehend plaintiff by grabbing his right arm, but he pulled away and ran behind Betty Colbert. Deputy Hughes cornered plaintiff in the living room and waited until other deputies arrived. With the assistance of another deputy, plaintiff was forced down onto the couch where Deputy Hughes placed handcuffs on plaintiff. Plaintiff was taken into custody without further incident.



Deputies were unable to make contact with the nearby resident who complained of the trespass in order to determine if plaintiff was, in fact, the prowling subject. Plaintiff was charged with one count of Penal Code section 148(a)(1) obstructing a peace officer.

### 2. Proposed Amendment to Pleadings Presently on File

    a. Plaintiff

Plaintiff may amend its pleadings based on additional information that may be brought to Plaintiffs' attention, including discovery efforts.

    b. Defendants

Defendants do not anticipate any amendment to it pleadings.

### 3. Summary of Uncontested and Contested Facts

    a. Plaintiff and Defendants Uncontested Facts

- Brennan Colbert was chased by Deputy Hughes
- Brennan Colbert was tazed by Deputy Hughes
- Brennan Colbert was arrested
- Deputy Hughes prepared a police report charging Brennan with "obstruct peace officer" [sic]
- Deputy Hughes transported Brennan to the hospital
- Deputy Hughes transported Brennan to the detention facility

    b. Plaintiff and Defendants' Contested Facts

    Plaintiff's Contested Facts

All material facts not specifically noted to be uncontested herein are contested.



### Defendant's Contested Facts

All material facts not specifically noted to be uncontested herein are contested.

The Kern County Sheriff's Department does not have a policy, custom or practice of allowing the use of force without reasonable cause, reason or justification.

The Kern County Sheriff's Department does not have a policy, custom or practice of authorizing or sanctioning false reporting of facts by deputies.

The Kern County Sheriff's Department does not have the policies, customs or practices alleged in plaintiff's complaint, set forth in the fourth (*Monell*) cause of action, at pages 12 through 16, inclusive.

Each and every County Defendant, agent and/or employee involved in the incident, whether or not a defendant in this lawsuit, acted within Department custom, policy and practice.

**4. Summary of Legal Issues Not in Dispute**

    a. Jurisdiction is not in dispute.

    b. Venue is not in dispute.

    c. The Applicable Federal and State Laws are not in dispute.

### Legal Issues in Dispute

### Plaintiff

Plaintiff disputes the legal positions presented in Defendant's portion.

### Defendant

    i. The actions of Deputy Hughes were, in all respects, lawful, reasonable, appropriate and necessary, and in conformance with the Policies, Rules and Regulations for the Kern County Sheriff's Office, as well as within accepted police policies, procedures and practices.



ii. None Plaintiff's rights of any kind or nature, were violated at any time during the incident, whether State, Federal, Statutory, Constitutional or otherwise,.

iii. Defendants deny that they are in any manner liable to Plaintiff.

iv. The use of force on Plaintiff by Deputy Hughes was justified and reasonable and was not excessive or any greater than was reasonably necessary to effectuate detention and arrest and to overcome plaintiff's resistance.

v. Deputy Hughes had probable cause to attempt to detain, restrain and question plaintiff.

vi. Plaintiff was provided prompt and sufficient notice that the Deputy was a law enforcement officer and that plaintiff was required to submit to detention and / or arrest.

vii. Pursuant to Federal Rules of Civil Procedure, Rules 12(b)(6) and 8, Plaintiffs' FAC as presently constituted, fails to state a claim upon which relief can be granted.

viii. Defendants have immunity on all state claims by virtue of the applicable immunities of the Tort Claims Act (Government Code §§ 810, et seq.).

ix. County has no liability to Plaintiff under the legal theories espoused in *Monell*, or under any other legal basis or theory.

x. Deputy Hughes is entitled to qualified immunity.

xi. County has no liability since an entity is liable under § 1983." Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978) only when "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.

### 5. Status of All Matters Presently Before the Court

a. Complaint was filed 10/2/2013

b. First Amended Complaint filed on 10/17/2013



c. All Parties have been served
   d. Answer filed by Defendants on 11//27/2013

6. **<u>Discovery Plan</u>**
   a. <u>Plaintiff</u>
      i.

      | February 24, 2014 | Exchange of Initial Disclosures |
      |---|---|
      | November 24, 2014 | Cut-Off date for Non-Expert Discovery |
      | November 10, 2014 | Disclosure of Expert Witnesses |
      | December 15, 2015 | Expert Witness Discovery |
      | None at this time. | Proposed Changes in Limits on Discovery |
      | No. | Do Parties Anticipate Need for a protective order relating to discovery? |
      | No. | Any Issues or Proposals relating to timing of scheduling of discovery? |
      | No. | Anticipate need to take discovery outside of U.S.? |
      | Yes, both. | Anticipate video and/or sound recording of depositions? |
      | July 14, 2014 | Mid-Discovery Status Report and Conference |



b. <u>Defendants</u>

| | |
|---|---|
| February 20, 2014 | Exchange of Initial Disclosures |
| December 16, 2014 | Cut-Off date for Non-Expert Discovery |
| January 16, 2015 | Disclosure of Expert Witnesses |
| March 2, 2015 | Expert Witness Discovery |
| None at this time. | Proposed Changes in Limits on Discovery |
| Yes. | Do Parties Anticipate Need for a protective order relating to discovery? |
| No. | Any Issues or Proposals relating to timing of scheduling of discovery? |
| No. | Anticipate need to take discovery outside of U.S.? |
| No. | Anticipate video and/or sound recording of depositions? |
| September 17, 2014 | Mid-Discovery Status Report and Conference |

## 7. <u>Discovery Relating to Electronic, Digital and/or Magnetic Data</u>

a. <u>Plaintiff</u>

Plaintiffs will be seeking all audio, video and other electronic, digital and/or magnetic data which relates to this incident. This includes, but is not limited to,



10

JOINT SCHEDULING REPORT

any camera footage from deputy vehicles, camera footage from the detention center and medical facility, deputy radio transmissions, deputy cell phone text messages; any reports, emails, or other documents containing information regarding the incident. Defendants have a duty to preserve such evidence.

    b. <u>Defendants</u>

        Defendant does not anticipate any issue regarding electronic discovery.

## 8. <u>Dates Agreed to by All Counsel</u>

    a. Filing non-dispositive and dispositive pre-trial motions:

        i. <u>Plaintiff</u>: Non-dispositive motions to be filed by **November 17, 2014**. Dispositive motions to be filed by **January 15, 2015.**

        ii. <u>Defendants</u>: Non-dispositive motions to be filed by **March 9, 2015**. Dispositive motions to be filed by **April 13, 2015.**

    b. Pre-Trial Conference Date:

        i. <u>Plaintiff</u>: **February 9, 2015**
        ii. <u>Defendants</u>: **June 15, 2015**.

    c. Trial Date:
        i. <u>Plaintiff</u>: **March 9, 2015**
        ii. <u>Defendants</u>**: July 13, 2015**



## 9. Settlement

a. <u>Plaintiff</u>

Plaintiff is agreeable to exploring possible settlement.

b. <u>Defendants</u>

Defendant does not believe settlement can be considered at this time and does not believe a settlement conference would be fruitful any sooner than after discovery.

## 10. Jury / Non-Jury Trial

a. <u>Plaintiff and Defendants</u>

Jury trial.

## 11. Length of Trial

a. <u>Plaintiff</u>

Plaintiff estimates a 5 to 7 day trial regarding liability and damages. Plaintiff represents that if the <u>Monell</u> issues are reached, this may extend this time schedule significantly to approximately 1 additional week.

b. <u>Defendants</u>

Defendant estimates a 5 day jury trial with additional time as indicated by plaintiff if Monell issues and or punitive damages are reached.



## 12. Jurisdiction of U.S. Magistrate Judge

    a. <u>Plaintiff</u>

Consent to jurisdiction of U.S. Magistrate Judge.

    b. <u>Defendants</u>

    Consent to U.S. Magistrate Judge.

## 13. Bifurcation

    a. <u>Plaintiff</u>

    None at this time.

    b. <u>Defendants</u>

    Defendants request bifurcation of Monell issues as well as punitive damage issues.

## 14. Related Matters

    a. <u>Plaintiff</u>

    None at this time.

    b. <u>Defendants</u>

    None at this time.



Date: January 8, 2014            Respectfully Submitted,

KHORRAMI BOUCHER
SUMNER SANGUINNETI, LLP

LAW OFFICES OF HERMEZ MORENO, PC

By: /s/ Hermez Moreno
HERMEZ MORENO, ESQ.
PAYMON KHATIBI, ESQ.
*Attorneys for* Plaintiff

OFFICE OF COUNTY COUNSEL
COUNTY OF KERN

By: /s/ Judith Denny
JUDITH M. DENNY, ESQ.
*Attorney for* Defendants



14

JOINT SCHEDULING REPORT

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was electronically filed on this 9th day of January. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's System.

/s/ Maria Zarate

Maria Zarate
mzarate@kbsslaw.com
KHORRAMI BOUCHER
SUMNER SANGUINETTI, LLP
444 S. Flower Street
33RD Floor
Los Angeles, CA 90071
Tel: (213)596-6000
Fax: (213) 596-6010