Raymond P. Boucher, State Bar No. 115364
  ray@boucher.la
Hermez Moreno, State Bar No. 72009
  moreno@boucher.la
Brian M. Bush, State Bar No. 294713
  bush@boucher.la
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:   (818) 340-5400
Fax:   (818) 340-5401

Attorneys for Plaintiff, Brennan Colbert

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

| | |
|---|---|
| BRENNAN COLBERT,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF KERN, et al.,<br><br>    Defendants. | Case No. 1:13-cv-01589-JLT<br><br>**PLAINTIFF BRENNAN COLBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE (DOC. 24)**<br><br>The Hon. Jennifer L. Thurston |

**TO THE HONORABLE COURT AND ALL PARTIES BY AND THROUGH THEIR ATTORNEYS OF RECORD:**

Plaintiff Brennan Colbert ("Plaintiff") hereby submits his response to the Court's May 28, 2015, Order to Show Cause why the above referenced case should not be dismissed. Plaintiff's case should not be dismissed because: (a) Plaintiff has not abandoned his case; (b) Plaintiff was unaware until June 8, 2015, of the Court's prior Orders to Show Cause, had no reason prior to that date to know of the Orders, and did not know that his attorneys of record, Khorrami, LLP, were not responding to the Court or to Defendants' counsel; (c) Plaintiff is seeking to substitute into his case the undersigned attorneys and firm, BOUCHER LLP, who have taken

immediate steps to preserve his rights and will vigorously prepare his case for trial; (d) BOUCHER LLP and the undersigned attorneys were not Mr. Brennan's attorneys during the time period when the Court's prior Orders were not responded to; and (e) terminating sanctions are not warranted under the circumstances.

## I. MR. COLBERT HAS NOT ABANDONED HIS CASE

Mr. Colbert received no communication from his attorneys, Khorrami, LLP, when the Court's May 13, 2015 Order to Show Cause (Doc. 23) was entered. Declaration of Brennan Colbert, ¶¶ 9-10. Likewise, he received no communication from his attorneys, Khorrami, LLP, when the Court's May 28, 2015, Order to Show Cause was entered, threatening terminating sanctions. *Id.*

Furthermore, Mr. Colbert had no reason to know that his case was in jeopardy of terminating sanctions until June 8, 2015, when the undersigned attorneys from BOUCHER LLP contacted him and advised him of the situation. *Id*. To his knowledge, he has fully participated in this litigation. He sat for his duly noticed deposition and responded to all discovery requests provided to him.[1] *Id*. Mr. Colbert cannot be charged with knowledge of his counsel's failure to respond to defense counsel or the Court when his counsel is not communicating these events with him. Further, Mr. Colbert had no reason under the circumstances to inquire into the status of his case during the months of February through June. He complied with all discovery he was made aware of, and knew his case was not set for trial until December, 2015. *Id*.

Compounding his attorney's failure to communicate, is that fact that since December, 2014, Mr. Colbert has been in Oklahoma, fully involved in around-the-

---

[1] Mr. Colbert answered Defendant's most recent set of interrogatories while he was in basic training in Oklahoma, and mailed the responses back to associate attorney at Khorrami, LLP, Valerie Bradbury, in mid-late January, 2015. He was unaware that Khorrami, LLP, did not forward the responses to Defendants. Declaration of Brennan Colbert, ¶¶ 9-10.

clock basic training for the Army followed by advanced individual training for qualification as an Air Defense Battle Management System Operator, striving to fulfill his goal of serving his Country. Declaration of Brennan Colbert, ¶¶ 6, 7, 9. He returned to his home in Bakersfield, on leave, on Saturday June 6, 2015, completely unaware of what had transpired in his case. *Id.*, ¶ 10. On Monday, June 8, 2015, after the undersigned attorneys, BOUCHER LLP, received confirmation from Mr. Colbert's attorneys, Khorrami, LLP, that they would consent to a substitution of counsel, Brian Bush of BOUCHER LLP contacted Mr. Colbert and informed him of the Court's May 28, 2015 Order. *Id.*; also see, Declaration of Brian M. Bush, ¶ 38.

Mr. Colbert still feels strongly that his rights were violated by the Defendants in this case, and the emotional and physical harm caused by Defendants is fresh in his memory. Colbert Declaration, ¶ 11. The Court should find good cause exists because Mr. Colbert has not abandoned his case, and does not intend to do so.

## II. PLAINTIFF SEEKS TO SUBSTITUTE-IN THE UNDERSIGNED ATTORNEYS, BOUCHER LLP, WHO INTEND TO LITIGATE THIS CASE THROUGH TRIAL, IF NECESSARY, AND WHO ACTED REASONABLY WHEN THEY DID NOT RESPOND TO THE MAY 13, 2015, ORDER TO SHOW CAUSE

### A. BOUCHER LLP Fully Intends on Preparing This Case For Trial, And Trying The Case If Necessary, And Has Already Taken Affirmative Steps To Preserve Mr. Colbert's Rights

In the last three days, the undersigned attorneys have worked tirelessly to ensure Mr. Colbert's rights would be protected, and that his case would be allowed to proceed on the merits. BOUCHER LLP hired a computer expert to work on the Khorrami, LLP, document system with the permission of Shawn Khorrami, managing partner of Khorrami, LLP, and acquired most of the case file from Khorrami, LLP, electronically at approximately 5:30 p.m., June 9, 2015. Bush Declaration, ¶ 43(a). Efforts are underway to respond to Defendants' discovery requests this week. *Id.*, ¶ 43(c). BOUCHER LLP secured substitution of counsel forms which will be filed concurrently herewith. They initiated a meet and confer

conference call with defense counsel to candidly discuss the status of the case and propose a collaborative approach that would allow BOUCHER LLP a reasonable but brief opportunity to get up to speed and complete necessary discovery. *Id.*, ¶¶ 40-42. And they have begun proactively contacting expert witnesses, despite the fact that Defendants will not stipulate to allow disclosures now that the cut-off has passed. *Id.*, ¶43(d). BOUCHER LLP will also be filing an application to modify the current scheduling order to allow Plaintiff to take the deposition of Defendant Hughes and to designate experts.

In short, the undersigned attorneys fully intend on prosecuting this case on behalf of Mr. Colbert to the fullest extent allowable under the circumstances. And they will do so expeditiously, as the last three days have demonstrated, so as to minimize any prejudice to Defendants and the Court. Because Plaintiff seeks to substitute-in new counsel who are prepared to litigate this case through trial, if necessary, the Court should not issue terminating sanctions.

**B. BOUCHER LLP Acted Reasonably When It Did Not Respond To The Court's May 13, 2015, Order To Show Cause**

It is important to note that Khorrami, LLP, and not BOUCHER LLP, was hired by Plaintiff to prosecute this case. Declaration of Shawn Khorrami, ¶ 2. Attorneys Brian Bush and Hermez Moreno worked on the case in 2013 and 2014, up until December 15, 2014, as employees at Khorrami, LLP. See, Declaration of Hermez Moreno, ¶¶ 2-4, 6; Bush Declaration, ¶¶ 3, 5-8. When they left the employment of Khorrami, LLP, the case stayed at the firm that Mr. Colbert hired. Khorrami Declaration, ¶ 5.

As set forth in detail in the Declaration of Brian M. Bush, filled concurrently herewith, an administrative error while updating Mr. Bush and Mr. Moreno's contact information in the Court's CM/ECF system caused a new appearance in this case on their behalf, and thus on behalf of BOUCHER LLP. See, e.g., Bush Declaration, ¶¶ 18-32. This was inadvertent, and BOUCHER LLP requested that

00035344.2     4     Case No. 1:13-cv-01589-JLT
PLAINTIFF BRENNAN COLBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE (DOC. 24)

Khorrami, LLP, file a notice to correct the Docket. Bush Declaration, ¶¶ 21-24. On March 6, 2015, Khorrami, LLP, filed a notice intended to alert the court that Mr. Bush and Mr. Moreno left the employment of Khorrami, LLP, and should be removed from the proof of service in the CM/ECF system. Khorrami Declaration, ¶ 9; Bush Declaration, ¶ 26.

On May 13, 2015, the Court issued an Order to Show Cause why sanctions should not be imposed for failure to file a substitution of counsel form per prior Order from the Court. BOUCHER LLP, of course, could not file such form, because they were not Mr. Colbert's retained attorneys at the time. A paralegal contacted the Court Clerk on behalf of BOUCHER LLP to inquire into the circumstances of the May 13th Order. The Clerk advised her that receipt of the May 13th Order was in error, that the Clerk did not check the "second part" of the March 6th notice filed by Khorrami, LLP, and that Mr. Bush and Mr. Moreno would be officially terminated as counsel of record. Bush Declaration, ¶ 32.

Based on the clerk's representation, and the fact that BOUCHER LLP were not Mr. Colbert's retained attorneys, did not have the case file, and did not find it appropriate to communicate with another firm's client about their case, BOUCHER LLP took no further action. *Id.,* ¶ 33. The undersigned attorneys submit that their actions under these circumstances were reasonable, and should not be the subject of sanction. However, if the Court should still find error in BOUCHER LLP's failure to respond to the May 13, 2015, OSC (Doc. 23), the undersigned attorneys request that the Court does not punish Plaintiff for it. For these reasons, the Court should find that good cause exists to allow the case to proceed.

### III. TERMINATING SANCTIONS ARE NOT WARRANTED UNDER THE CIRCUMSTANCES

In its most recent Order, the Court cites the Ninth Circuit case of *Thompson v. Housing Authority of Los Angeles*, 782 F.2d 829, at 831 (9th Cir. 1986) for the well-established principle that a District Court has the inherent authority to control their

docket, by imposing sanctions up to and including dismissal of an action. In *Thompson*, the District Court sanctioned the plaintiff with dismissal of his case after his attorneys failed on three separate occasions to arrive prepared at the pre-trial conference. *Thompson, supra,* 782 F.2d at 830-831. Prior to dismissing the case, the court continued the pretrial conference twice. *Id*.

On appeal, the Ninth Circuit upheld the judge's ruling, finding that the District Court did not abuse its discretion. It found that the multiple continuances evidenced the District Court's proper weighing of the policy factors favoring resolution of cases on their merits, prior to imposing terminating sanctions. *Id*. at 832. The *Thompson* court stated, "It is clear from this record that the district judge gave Thompson abundant opportunity and incentive to prepare for the pretrial conference and trial. The court's patience in granting continuances in this case indicates that it weighed the various factors required by *Henderson* before imposing the sanction of dismissal." *Id*., citing *Henderson v. Duncan,* 779 F.2d 1421, 1423-1424 (9th Cir.1986).

*Henderson* instructs that a trial court, prior to imposing the sanction of dismissal, is required to weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions. *Henderson v. Duncan, supra*, 779 F.2d at 1423-1424. Subsequent cases expand on the fifth factor by breaking it into the following sub-parts: "The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

The imposition of a scrutinizing balancing test upon District Courts is important, due to the fact that termination of a case is the most severe punitive

measure a court can take. As the court in *Connecticut Gen. Life* stated, "A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe…Only 'willfulness, bad faith, and fault' justify terminating sanctions." *Connecticut Gen. Life Ins. Co., supra*, 482 F.3d at 1096.

Plaintiff here does not dispute that the Court issued two successive warnings of increasing severity, exhorting Plaintiff's counsel to abide by its Order to file a substitution of attorney. However, several factors should set this case apart from the above cases in which terminating sanctions were imposed. First, as set forth in the attached declarations, Mr. Colbert, who was in the Army at basic training when the orders issued, and has at all times complied with the discovery obligations his attorneys made him aware of, did not and could not have reasonably known that his case was in jeopardy of dismissal because his counsel did not communicate the issuance of the orders to him. It would work a manifest injustice to punish him for his attorney's failures to respond to the Court at this juncture, where he comes now only days after learning of the May 28, 2015 OSC, seeking to substitute new counsel and explain to the Court that he does not intend on abandoning his case.

Second, the undersigned attorneys seeking to substitute into the case were not Mr. Colbert's retained attorneys at the time and did not have the authority to file the documents the Court requested in the May 13, 2015, OSC. Moreover, they were informed by the Clerk of the Court that a response would not be necessary, and that they received the Order in error. Bush Declaration, ¶ 32. This is a far stretch from the attorneys in *Henderson*, who blatantly disregarding three successive warnings of increasing severity by showing up to three pretrial conferences unprepared. The first situation could at most be described as a honest and good-faith misunderstanding, whereas the latter, a willful disregard for the court's and defendant's calendar.

Lastly, and most importantly, is that Plaintiff here has responded to the Court's May 28, 2015, OSC timely, and with candid and responsive factual support.

And he requests only the opportunity to have his case resolved on the merits, in hopes that, through the judicial process, he will achieve some vindication of the rights he feels were abridged. The undersigned attorneys share this enthusiasm, and echo Mr. Colbert's request that the Court find good cause to allow the case to proceed.

## IV. CONCLUSION

The foregoing illustrates that there is good cause to allow Plaintiff's case to proceed on the merits. Therefore, the Court should not to issue terminating sanctions.

DATED: June 10, 2015

Respectfully submitted,

BOUCHER LLP

By:    /s/ Brian M. Bush
RAYMOND P. BOUCHER
HERMEZ MORENO
BRIAN M. BUSH
Attorneys for Plaintiff, Brennan Colbert