UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENNAN COLBERT, | Case No.: 1:13-cv-1589 - JLT |
| Plaintiff, | PRETRIAL ORDER |
| v. | Deadlines: |
| COUNTY OF KERN, et al., | Motions in Limine Filing: 11/13/15 |
| Defendants. | Oppositions to Motions in Limine: 11/27/15 |
| | Hearing on Motions in Limine: 12/7/15 |
| | Trial Submissions: 12/4/15 |
| | Jury trial: 12/15/2015, 8:30 a.m. |

In this action, Plaintiff claims Defendants violated his constitutional rights to be free from the use of excessive force and unlawful arrests. (Doc. 7) In addition, Plaintiff claims Defendants are liable for assault, battery, and intentional infliction of emotional distress in violation of California law. (*Id.*)

**A.     JURISDICTION/ VENUE**

The Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331. Further, Plaintiff's claims arise out of events that occurred in Kern County, California. Accordingly, venue is proper in the United States District Court for the Eastern District of California sitting in Bakersfield. *See* 28 U.S.C. § 1391.

///

**B.     JURY TRIAL**

Plaintiff and Defendants have made timely demands for a jury trial on all issues. Thus, the trial will be by jury.

**C.     UNDISPUTED FACTS**

Late in the evening on August 23, 2012, Michael Dawson, who lives at 1913 Verdugo Lane, near Plaintiff's residence, in Bakersfield, California, called 911 and was connected to the Kern County Sheriff's dispatcher. He reported a prowler had walked into his back yard the Monday prior. Dawson also reported he had seen the same prowler suspect three days prior to the call, riding a bicycle nearby. Dawson gave a description of the prowler to the dispatcher. Defendant Hughes was dispatched to Dawson's home on August 23, 2012, at approximately 11:00 p.m. to take a report from Dawson.

After speaking with Dawson, Deputy Hughes, patrolled the vicinity, and noticed Plaintiff Brennan Colbert walking not too far from Dawson's residence. Defendant and Plaintiff had an interaction which resulted in Defendant deploying his department issued Taser device against Plaintiff, striking him once, and subsequently arresting Plaintiff. Plaintiff was booked on the charge of obstructing a peace officer, Penal Code § 148(a)(1).

Plaintiff spent one night in jail and was released the following morning. No charges were formally filed against Plaintiff and Plaintiff has never been convicted of a crime arising from the above incident.

Defendant Hughes, at all times relevant, was a peace officer, employed by the Kern County Sheriff's Department, and was acting under color or state law and in the course and scope of his employment.

**D.     DISPUTED FACTS**

All other facts are in dispute.

**Plaintiff's disputed facts**:

1.     Whether Plaintiff, on the night of August 23, 2012, resembled the description of a prowler given by witness Dawson;

2.     Whether witness Dawson gave Defendant Hughes the descriptions of the prowler which Hughes attributes to Dawson in his supplemental (and undated) investigation report under Case

2

Number SR12-23093;

3. Whether Defendant Hughes used profane and aggressive language toward Plaintiff at any point in time during their encounter on the night of August 23, 2012;

4. Whether Defendant Hughes could see Plaintiff's face and hair prior to attempting a pedestrian stop on Plaintiff on the night of August 23, 2012;

5. Whether Plaintiff walked, or ran, in the direction of his home when Defendant Hughes exited his patrol vehicle on the night of August 23, 2012;

6. Whether Defendant Hughes announced the reasons for his pedestrian stop of Plaintiff on the night of August 23, 2012;

7. Whether Defendant Hughes clearly communicated to Plaintiff that he was not free to leave the pedestrian stop Defendant was initiating on Plaintiff;

8. Whether at the time Defendant choose to escalate the consensual investigatory pedestrian stop to a custodial detention, he had probable cause;

9. Whether at the time Defendant thought he had probable cause, the articulable facts known to Defendant at the time reasonably supported his belief;

10. Whether Plaintiff removed his house keys and showed Defendant Hughes his keys prior to opening the front door of his residence;

11. Whether Defendant Hughes kicked open the front door to Plaintiff's house;

12. Whether Plaintiff turned and raised his fists at Defendant;

13. Whether Defendant Hughes tazed Plaintiff inside, or outside of his home;

14. Whether Defendant Hughes threatened to kill Plaintiff;

15. Whether Defendant Hughes used profane and belligerent language with Plaintiff's parents, once Defendant Hughes was inside their home;

16. Whether Defendant County of Kern disciplined Defendant Hughes;

17. Whether Defendant County of Kern investigated or performed any follow up inquiry on the incident or the substance of Plaintiff's allegations; and

18. The contents of every verbal exchange between Plaintiff and Defendant Hughes from the night of August 23, and early morning August 24, 2012.

**Defendants' disputed facts**:

1. Whether Deputy Hughes had reasonable suspicion to detain Plaintiff for questioning regarding the circumstances reported by Michael Dawson;

2. Whether Plaintiff, on the night of August 23, 2012, resembled generally the description of a prowler given by witness Dawson;

3. Whether witness Dawson gave Defendant Hughes the descriptions of the prowler which Hughes attributes to Dawson in his supplemental (and undated) investigation report under Case Number SR12-23093;

4. Whether Defendant Hughes announced himself as Sheriff and ordered Plaintiff to stop;

5. Whether Plaintiff ducked behind a vehicle when Defendant Hughes spotlighted him on the night of August 23, 2012;

6. Whether Plaintiff turned and ran when approached by Hughes while ordering Plaintiff to stop;

7. Whether Defendant Hughes was able to communicate with Plaintiff due to Plaintiff refusing to stop, and running when Hughes ordered him to stop;

8. Whether Plaintiff had a duty to refrain from resisting the attempt by Hughes to detain him for questioning and investigation;

9. Whether Plaintiff had a duty to refrain from resisting Hughes' attempt to arrest him;

10. Whether Deputy Hughes had probable cause to arrest Plaintiff for obstructing / resisting a peace officer;

11. Whether Defendant Hughes use of the Taser was a reasonable use of force under the circumstances;

12. Whether Deputy Hughes was required to desist in effecting detention when faced with Plaintiff's resistance;

13. Whether Plaintiff turned and took a fighting stance toward Deputy Hughes;

14. Whether Deputy Hughes could lawfully use his foot to prevent Plaintiff from slamming the door in his face in order to gain control over Plaintiff;

15. Whether Deputy Hughes was required to desist in arresting Plaintiff when faced with

Plaintiff's resistance;

16. Whether Plaintiff cursed at Deputy Hughes;

17. Whether Plaintiff continued to resist and / or obstruct the lawful authority of Deputy Hughes after he ran into his residence;

18. Whether Plaintiff suffered any injury from the handcuffs;

19. Whether Plaintiff suffered any injury from the Taser;

20. Whether Deputy Hughes was required to desist in his efforts to detain and arrest Plaintiff because Plaintiff ran into his house;

21. Whether Deputy Hughes was required to desist in his efforts to detain and arrest Plaintiff whether or not plaintiff told him he lived down the street and was going into his home;

22. Whether Kern County Sheriff's Department had a custom or policy that proximately caused a deprivation of Plaintiff's constitutional rights;

23. Whether Defendant Hughes is entitled to qualified immunity under federal law; and

24. Whether Defendant Hughes acted in willful or reckless disregard of federally guaranteed rights such that exemplary damages are appropriate.

**E.  DISPUTED EVIDENTIARY ISSUES**

1. Whether Michael Dawson may testify as to whether Plaintiff now resembles the prowler he spoke of in August 2012. At the hearing, the Court indicated its tentative ruling that he would not be permitted to do so;

2. Whether Michael Dawson's 911 call is admissible evidence. At the hearing, the Court indicated its tentative ruling that the 911 call would not be admitted to challenge the reasonableness of Deputy Hughes' actions. Whether it can be admitted for impeachment of Mr. Dawson will depend upon the evidence submitted at trial;

3. Whether the County's computer-generated "Event Chronology" is admissible. The parties agree this may be admitted and that no custodian of records is needed for its introduction;

4. Whether Plaintiff's father, Joe Colbert, may testify at trial. There is no dispute that Joe Colbert can be called, assuming his testimony is not cumulative;

5. Whether testimony from non-retained medical experts Joan Knowlden and Lance

Steinberg should be permitted. At the hearing, the Court indicated its tentative ruling that Plaintiff would not be permitted to do so given these non-retained experts were not timely disclosed and the scheduling order was not amended to permit it; and

    6.    Whether photographs of shoe prints on Plaintiff's door are admissible. At the hearing, the Court indicated its tentative ruling that the photo may be admitted, assuming a proper foundation is laid.

Despite these tentative rulings, the parties may file motions in limine on these topics, if they choose.

**F.    RELIEF SOUGHT**

Plaintiff seeks general damages for pain and suffering from all Defendants, as well as an award of punitive damages against Defendant Hughes only.  Defendants seek judgment in their favor and an award of attorney fees and costs.

**G.    POINTS OF LAW**

    **1.    Excessive Force**

The Due Process Clause of the Fourteenth Amendment protects individuals who have not yet been convicted of a crime "from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 388 (1989).  However, allegations of excessive force during the course of an arrest are analyzed under the Fourth Amendment, which prohibits arrests without probable cause or other justification. *Id.* ("claim[s] that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' … are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard"); *see also Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("the use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures").

The Supreme Court explained,

> As in other Fourth Amendment contexts . . . the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 396-97 (1989) (internal citations omitted).  In applying this standard, the Ninth Circuit instructs the fact-finder to consider "the totality of the circumstances and . . . whatever specific factors may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

Factors to be considered in evaluating whether the force used was reasonable include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).  In addition, the fact-finder may consider "whether officers administered a warning, assuming it was practicable." *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381-82 (2007).  Ultimately, the "reasonableness" of the actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

**2.     False Arrest**

The Fourth Amendment prohibits arrests without probable cause or other justification, and provides: "The right of the people to be secure in their persons. . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." *U.S. Constitution, amend. IV*.  A claim for unlawful arrest is cognizable when the arrest is alleged to have been made without probable cause.  *Dubner v. City & County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)).

**3.     *Monell* Liability**

As a general rule, a local government entity may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains.  *Gibson v. County of Washoe,* 290 F.3d 1175, 1185 (9th Cir. 2002).  Thus,

a government entity may be sued under Section 1983 when a governmental policy or custom is the cause of a deprivation of federal rights. *Monell*, 436 U.S. at 694.

To establish liability, Plaintiff must demonstrate: (1) he was deprived of a constitutional right; (2) the County had a policy (3) that amounted to deliberate indifference of his constitutional right; and (4) the policy "was the moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Monell*, 436 U.S. at 690-92. There are three methods by which a policy or custom of a government may be demonstrated when:

> (1) A longstanding practice or custom…constitutes the standard operating procedure of the local government entity;
>
> (2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or
>
> (3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum v. Fresno Police Dep't*, 2011 U.S. Dist. LEXIS 10698, at *8 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)). Furthermore, a policy may be inferred if there is evidence of repeated constitutional violations for which officers were not reprimanded. *Menotti*, 409 F.3d at 1147.

A policy amounts to deliberate indifference where "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (citing *Oviatt*, 954 F.2d at 1477-78); *accord Canton*, 489 U.S. at 390. To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson,* 290 F.3d at 1186 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)).

### 4. Intentional Infliction of Emotional Distress

To succeed upon a claim for intentional infliction of emotional distress Plaintiff must demonstrate: (1) outrageous conduct by the defendants (2) who intended to cause or recklessly disregarded the probability of causing emotional distress, (3) and the defendants' actions were the actual

and proximate cause (4) of Plaintiff's severe emotional suffering. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004) (citing *Brooks v. United States*, 29 F. Supp. 2d 613, 617 (N.D. Cal. 1998)). Outrageous conduct is demonstrated when a "defendant's conduct was 'so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" *Van Horn v. Hornbeak*, 2009 U.S. Dist. LEXIS 16134, at *8 (E.D. Cal. Feb. 18, 2009) (quoting *Ricard v. Pacific Indemnity Co.*, 132 Cal. App. 3d 886, 895 (1982)).

### 5. Assault

Under California law, an assault is a "demonstration of an unlawful intent by on person to inflict immediate injury on the person of another then present." *Lowry v. Standard Oil Co.*, 63 Cal. App. 2d 1, 6-7, 146 P.2d 57 (1944); see also CACI § 1301. "The tort of assault is complete when anticipation of harm occurs." *Kiseskey v. Carpenters' Trust for S. Cal.*, 144 Cal.App.3d 222, 232, (1983). To succeed upon a claim of assault under California law, a plaintiff must show: (1) that the defendants intended or threatened to cause offensive contact (2) the plaintiff believed himself to be in danger, (3) the contact occurred against the plaintiff's will, (4) the conduct caused harm, and (5) the defendants' conduct substantially caused the harm. *So v. Shin*, 212 Cal. App. 4th 652, 668-69, 151 Cal. Rptr. 3d 257 (2013).

### 6. Battery

Under California law, a battery occurs when: "[a] defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) [the] plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to [the] plaintiff." *Brown v. Ransweiler*, 89 Cal.Rptr.3d 801, 811 (2009). Thus, the claim is analogous to a claim for excessive use of force. *Brown*, 89 Cal. Rptr.3d at 811; *see also Edson v. City of Anaheim,* 63 Cal.App.4th 1269, 1272 (1998) (an officer who uses force in the course of an arrest is not liable for battery unless the plaintiff proves that the force used was unreasonable). Consequently, a claim for battery under California law is analyzed under the Fourth Amendment's reasonableness standard. *Edson*, 63 Cal. App. 4th at 1274; *Saman v. Robbins*, 173 F.3d 1150, 1156-57 & n. 6 (9th Cir. 1999).

### 7. Qualified Immunity

Qualified immunity protects government officials from "liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

The threshold inquiry to a qualified immunity determination is whether the facts alleged, when taken in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a statutory or constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a constitutional violation occurred, the court must next determine whether the statutory or constitutional right was "clearly established." *Id.* A right is "clearly established" in the context of qualified immunity if "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law [at the time of the violation] gave 'fair warning' to the official[] that [his] conduct was unconstitutional." *Clement v. Gomez*, 298 F.3d 898, 906 (2002) (quoting *Saucier,* 533 U.S. at 202).

**8.     Punitive Damages**

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2009). The jury must find that the defendant's conduct is "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1986); *see also Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994).

**H.    ABANDONED ISSUES**

Plaintiff has abandoned his claim for malicious prosecution. (Doc. 46 at 17)

**I.    WITNESSES**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**Plaintiffs' Witness List:**

1. Brennan Colbert
2. Betty Colbert
3. Joe Colbert
4. Eric Hughes
5. Michael Dawson
6. KCSD Deputy U. Weiss
7. KCSD Deputy Colbert
8. Roger Clark
9. Joan Knowlden
10. Dr. Lance Steinberg
11. Subpoena Custodian for Kern County Sheriff's Department and/or Sergeant

**Defendant's Witness List:**

1. Brennan Colbert
2. Eric Hughes
3. Sgt. Doug Sword
4. Michael Dawson
5. Betty Colbert
6. Joe Colbert
7. Sgt. Deputy U. Weiss
8. Sgt. Deputy J. Colbert
9. Curtis Cope

**J.   EXHIBITS, SCHEDULES AND SUMMARIES**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

///

**Plaintiff's Exhibits**

1. Event Chronology (Documents produced by Defendants)
2. Google Map of locations
3. Photo, Palm Ave. Westbound
4. Photo Plaintiff's front lawn
5. Photo walkway to porch of Plaintiff's home
6. Field arrest data 22979
7. Incident report 23093
8. Photo front door shoe print
9. Photo front door shoe print close-up
10. Audio CD (containing statements of Witness Dawson to police & audio of arrest of Plaintiff)
11. Transcript of audio on exhibit 12
12. ECD – Taser download printout
13. Photo of Plaintiff in entry way of his home
14. Photo of Plaintiff standing where Defendant Hughes stood in the entry way of his home.
15. Video CD (containing video of booking of Plaintiff at County Jail)
16. Kern County Policies and Procedures – Use of Force
17. Kern County Medical Center Medical Records for Brennan Colbert, attached to Defendants' Motion for Summary Judgment
18. Photos of Plaintiff's left wrist
19. Medical records of Joan Knowlden
20. Medical records of Lance Steinberg

**Defendants' Exhibits**

1. Event Chronology (Documents produced by Defendants)
2. Google Map, marked by Hughes during deposition
3. Field arrest data 22979
4. Incident report 23093

5. Audio CD of arrest of plaintiff)

6. ECD – Taser download printout

7. Video CD (containing video of booking of Plaintiff at County Jail)

8. Kern County Policies and Procedures – Use of Force

9. Kern County Medical Center Medical Records for Brennan Colbert, attached to Defendants' Motion for Summary Judgment

10. Medical records subpoenaed and received from Joan Knowlden

11. Hand drawn diagram, marked as exhibit C to Plaintiff Brennan Colbert's deposition

12. Report of Curtis J Cope.

Any of the exhibits identified herein that have not been provided to the opponent, **SHALL** be provided via e-mail or overnight mail to be received on or before **November 13, 2015**. On or before **November 25, 2015**, counsel **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examining each other's exhibits.

1. At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiff's exhibits and one listing Defendant's exhibits. In advance of the conference, counsel must have a complete set of their proposed exhibits in order to be able to fully discuss whether evidentiary objections exist. <u>Thus, any exhibit not previously provided in discovery **SHALL** be provided at least five court days in advance of the exhibit conference</u>.

2. At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence. These exhibits **SHALL** be marked as a joint exhibit and numbered as directed above. Joint exhibits **SHALL** be admitted into without further foundation.

All Joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g. JT/1, JT/2, etc.). Plaintiff's exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The Parties SHALL number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document

is offered which is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits. The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

**INDEX OF EXHIBITS**

| **EXHIBIT#** | **DESCRIPTION** | **ADMITTED IN EVIDENCE** |
|---|---|---|

3. As to any exhibit which is not a joint exhibit but to which there is no objection to its introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party. Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4. Each exhibit binder shall contain an index which is placed in the binder before the exhibits. Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

**INDEX OF EXHIBITS**

| **EXHIBIT#** | **DESCRIPTION** | **ADMITTED IN EVIDENCE** | **OBJECTION FOUNDATION** | **OTHER OBJECTION** |
|---|---|---|---|---|

5. On the index, as to exhibits to which the only objection is a lack of foundation, counsel will place a mark under the column heading entitled "Admissible but for Foundation."

6. On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, counsel will place a mark under the column heading entitled "Other Objections."

After the exhibit conference, Plaintiff and counsel for the defendants **SHALL** develop four complete, legible sets of exhibits. The parties **SHALL** deliver three sets of their exhibit binders to the Courtroom Clerk and provide one set to their opponent, no later than 4:00 p.m., on **December 11, 2015.** Counsel **SHALL** determine which of them will also provide three sets of the joint exhibits to the Courtroom Clerk.

7. The Parties **SHALL** number each page of any exhibit exceeding one page in length.

**K.    DISCOVERY DOCUMENTS**

The parties do not anticipate offering discovery documents into evidence. However, they believe they may rely upon them for purposes of impeachment. In the event they wish to admit any portion of a discovery document, the specific discovery request, e.g., interrogatory, request for admission, must be redacted so that any extraneous request/response is omitted.

**L.    FURTHER DISCOVERY OR MOTIONS**

No further discovery is sought by either party.

**M.    MOTIONS IN LIMINE**

Any party may file motions in limine. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial. "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Id.*

**In advance of filing any motion in limine, counsel SHALL meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine. Along with their motions in limine, the parties SHALL file a certification demonstrating counsel have in good faith met and conferred and attempted to resolve the dispute. Failure to provide the certification may result in the Court refusing to entertain the motion.**

Any motions in limine must be filed with the Court by **November 13, 2015**. The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial. Any opposition to the motion must be served on the other party, and filed with the Court by **November 27, 2015**. The Court sets a hearing on the motions in limine on **December 7, 2015,** at 10:00 a.m. Appearances via Courtcall are authorized.

The parties are reminded they may still object to the introduction of evidence during trial.

**N.    STIPULATIONS**

The parties stipulate that copies may be used in place of originals.

**O.     AMENDMENTS/ DISMISSALS**

None at this time.

**P.     SETTLEMENT NEGOTIATIONS**

The parties have discussed settlement in the past but have been unsuccessful.

**Q.     AGREED STATEMENT**

None

**R.     SEPARATE TRIAL OF ISSUES**

The parties SHALL file briefs outlining whether the Court should bifurcate the issue of *Monell* liability no later than **November 27, 2015**.

**S.     APPOINTMENT OF IMPARTIAL EXPERTS**

None requested.

**T.     ATTORNEYS' FEES**

If successful at trial, Plaintiff will be seeking attorney fees pursuant to 42 U.S.C. §1988. Similarly, Defendants will seek attorney fees pursuant to 42 U.S.C. § 1988.  (Doc. 47 at 22)

**U.     TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

Jury trial is set for **December 15, 2015**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the United States Courthouse, 510 19th Street, Bakersfield, California.  Trial is expected to last no longer than 2 days.

**V.     TRIAL PREPARATION AND SUBMISSIONS**

    **1.     Trial Briefs**

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **December 4, 2015**.

    **2.     Jury Voir Dire**

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **December 4, 2015**.

    **3.     Statement of the Case**

The parties **SHALL** file a joint non-argumentative, brief statement of the case which is suitable

for reading to the jury at the outset of jury selection on or before **December 4, 2015**. In the event they cannot agree on a joint statement, each side SHALL file a non-argumentative, brief statement of the case on or before **December 4, 2015.**

### 4. Jury Instructions & Verdict Form

The parties shall serve, via e-mail or fax, their proposed jury instructions in accordance with Local Rule 163 and their proposed verdict form on one another no later than on or before **November 13, 2015**. The parties shall conduct a conference to address their proposed jury instructions and verdict form no later than on or before **November 25, 2015**. At the conference, the parties **SHALL** attempt to reach agreement on jury instructions and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than on or before **December 4, 2015**, and identify such as the agreed-upon jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after genuine, reasonable and good faith effort** cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed (disputed) jury instructions and proposed (disputed) verdict form no later than on or before **December 4, 2015**, and identify such as the disputed jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible. All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction. Each instruction SHALL be numbered.

### W. OBJECTIONS TO PRETRIAL ORDER

Any party may, within 10 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Such objections shall clearly specify the

requested modifications, corrections, additions or deletions.

**X.   MISCELLANEOUS MATTERS**

None.

**Y.   COMPLIANCE**

Strict compliance with this order and its requirements is mandatory. All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.

IT IS SO ORDERED.

Dated:   **November 6, 2015**              **/s/ Jennifer L. Thurston**
                                           UNITED STATES MAGISTRATE JUDGE